**COLORADO ENVIRONMENTAL COALITION, Plaintiff,**

v.

**Roy ROMER, in his official capacity as Governor of the State of Colorado, et al., Defendants.**

**Civ. A. No. 92-B-625.**

United States District Court, D. Colorado.

July 28, 1992.

Fern L. Shepard, Sierra Club Legal Defense Fund, Denver, Colo., for plaintiff.

James M. Humes, Asst. Atty. Gen., Natural Resources Unit, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiff moves for its attorney fees and costs under the citizen suit provisions of the Safe Drinking Water Act (SDWA), 42 U.S.C. § 300j–8(d). The issue is adequately briefed and oral argument will not materially aid its resolution. Because plaintiff was a substantially prevailing party and its actions precipitated defendants' decision to enter into a consent decree, attorney fees and costs are appropriate here. Further, plaintiff's requested fees and costs are eminently reasonable. Therefore, plaintiff's motion for fees and costs is granted in its full amount of $21,193.50.

Plaintiff brought this action to force defendants' compliance with the provisions of the Lead Contamination Control Act of 1988 (LCCA), 42 U.S.C. § 300j–21 to 300j–25, amending the SDWA. Specifically, plaintiff sought an order and schedule compelling defendants to distribute certain guidance documents and lists to Colorado day care centers, and an order and schedule compelling defendants to establish a remedial program for day care centers.

Pursuant to the citizen suit provisions of the SDWA, plaintiff sent notice on January 30, 1992 to defendants that they were in violation of the LCCA. Such notice must be sent 60 days before a lawsuit is filed. 42 U.S.C. § 300j–8(b). The sixty day period expired on March 30, 1992, and plaintiff filed suit on April 2, 1992. During those sixty days, plaintiff and defendants engaged in extensive settlement negotiations, eventually resulting in a stipulated consent decree and order that was filed simultaneously with the complaint. I approved the consent decree and signed the order on April 3, 1992. Not only did the consent decree provide the precise relief plaintiff sought in its complaint, but also it imposed

duties on the state not specifically required by the LCCA. The question of attorney fees and costs was expressly left open in the decree.

The SDWA provides that courts "may award costs of litigation (including reasonable attorney and expert witness fees) to any party whenever the court determines that such an award is appropriate." 42 U.S.C. § 300j–8(d). The Supreme Court has interpreted identical language in the Clean Air Act as allowing fees only when a party achieves "some degree of success on the merits." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694, 103 S.Ct. 3274, 3282, 77 L.Ed.2d 938 (1983). Parties are considered prevailing for the purposes of an award of attorney fees if they "succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers' Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989).

■ Moreover, a plaintiff may be a prevailing party in the absence of a judicial determination on the merits. *Foremaster v. City of St. George*, 882 F.2d 1485, 1488 (10th Cir.1989), *cert. denied*, 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990). In such circumstances, the Tenth Circuit has adopted the "catalyst" test. "A plaintiff must show (1) that the lawsuit is causally linked to securing the relief obtained, and (2) that defendant's conduct in response to the lawsuit was required by law." *Id.* The lawsuit need not be the only reason for the defendant's changed conduct, but it must be a "substantial factor or significant catalyst." *Id.* *See also, Luethje v. Peavine School Dist.*, 872 F.2d 352, 354 (10th Cir.1989) (defendant's change in policy was "to quell disharmony caused by plaintiff's complaints").

■ Here, plaintiff is clearly the substantially prevailing party. Plaintiff's complaint set out two specific requests for relief, both of which were achieved precisely and completely by the consent decree and order. Under the consent decree, defendants must disseminate to Colorado day care centers the documents that the LCCA required it to distribute years ago. Defendants must also establish a remedial program consistent with section 300j–24(d)(1) of the Act. Moreover, because the consent decree is a binding, judicially enforceable order, the legal relationship between these parties has been materially altered. Congress enacted the citizen suit and attorney fee provisions of the SDWA to promote private enforcement of the substantive provisions of that Act. Thus, plaintiff's action and the resulting consent decree that binds defendants to comply with the terms of the LCCA alters the parties legal relationship in a manner Congress sought to promote in the fee statute.

Further, I conclude that plaintiff's action was the catalyst for defendants' acquiescence. At the time plaintiff sent its notice of violations letter, defendants had been in violation of the LCCA's provisions for close to three years. Upon receiving this letter and learning of plaintiff's intent to file a citizen suit as soon as the 60 day period expired, defendants entered into extensive settlement negotiations that ultimately led to the consent decree. The timing and chronology alone define the cause of defendants' change of conduct. *See, Luethje*, 872 F.2d at 354, ("[T]he sequence of events ... strongly indicates that plaintiff's suit was, at the very least, a significant catalyst or substantial factor in causing defendants to change their policy"). Additionally, the relief obtained by the consent decree was required by law. Section 300j–24(c) of the LCCA requires each state to distribute to day care centers certain documents. The Act also requires the state to implement lead contamination remedial programs at schools, and defines schools to include day care facilities. 42 U.S.C. §§ 300j–24(d)(1) and 300j–21(6).

Notwithstanding this clear analysis, defendant argues that the lawsuit could not

have been a catalyst because it agreed to the terms of the consent decree before the case was filed. However, defendants advocate a much too cramped definition of "litigation" within the spirit of the SDWA. For the purposes of the catalyst test, litigation does not begin on the day the complaint is filed. Here, litigation effectively began when plaintiff sent the statutorily required notice of violations letter and threatened to bring a citizen suit. If defendants are brought into early compliance merely through the threat of an action without the necessity of full-blown litigation, then so much the better for the children. Indeed, a plaintiff who forces compliance with the mandate of Congress should not be penalized because a defendant bows to the inevitable before the complaint is even filed.

Defendants also argue that there was no need to file a case at all. I disagree. Unless plaintiff filed a case, it could not have obtained the consent decree and order. Now, if defendants do not implement the policies required by the LCCA and set out in the decree, plaintiff can obtain a court order to force compliance. Given defendants' past delay in complying with the LCCA, I conclude that plaintiff acted reasonably in obtaining a judicially enforceable order.

Lastly, defendants argue that a fee award is not appropriate here because they acted with "exceptional good faith" in settling the action before it was even filed. Again, I disagree. The LCCA was passed in 1988. Defendants did not comply with parts of that Act until threatened with a lawsuit in 1992. Although defendants' early settlement is laudatory, that does not render an award of fees inappropriate. Therefore, I conclude that plaintiff is entitled to its "costs of litigation" and I turn now to the determination of those costs.

The "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. *See also, Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir.1983).

The court may then adjust the "lodestar" calculation up or down based on certain factors. In assessing whether hours expended are reasonable, the Supreme Court favors treating a case as a whole, rather than as atomized line-items. *INS v. Jean*, 496 U.S. 154, 162, 110 S.Ct. 2316, 2320, 110 L.Ed.2d 134, 144 (1990). Indeed, the Court expressly rejected the notion that attorney fees are only compensable if incurred during judicial actions. *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 478 U.S. 546, 558–60, 106 S.Ct. 3088, 3094–96, 92 L.Ed.2d 439 (1986). Instead, the Court has adopted a more pragmatic approach that looks at whether the hours were "useful and of a type ordinarily necessary to secure the final result." *Id.* at 561, 106 S.Ct. at 3096.

Plaintiff's counsel, Fern Shepard of the Sierra Club Legal Defense Fund, billed an hourly rate of $155. Plaintiff submitted three affidavits from respected and credible Denver attorneys that this hourly rate is reasonable given Ms. Shepard's experience and specialization in complex environmental litigation. Likewise, Ms. Shepard's legal assistant's hourly rate of $72.50 was also deemed reasonable. I agree, and conclude that these hourly rate are reasonable. *See, Ramos*, 713 F.2d at 555.

Next, after careful review of plaintiff's detailed, contemporaneous time records, I conclude that all the hours expended here by counsel and her legal assistant, Arne Leonard, are reasonable. *See, Ramos*, 713 F.2d at 553–55. Indeed, counsel seems to have exercised remarkable restraint in her application for fees, striking herself items that did not seem appropriate. Furthermore, the issues raised in this action are of first impression and plaintiff's counsel quite correctly spent substantial time researching the cause of action and the potential defenses. Although they do not apply to this case, the new local rules for the District of Colorado require this kind of pre-filing activity. *See,* D.C.Colo.LR 29.1.

Moreover, I reject defendants' argument that, because they agreed to settle the case "at the outset," plaintiff should not be compensated for time spent after it

sent the notice letter. First, it is hotly disputed whether defendants agreed to settle "at the outset." Second, I conclude that these hours were useful and of a type ordinarily necessary to secure the final result obtained in this case. Defendants had not complied with the LCCA for close to three years. Hence, to ensure the best possible results, it was reasonable for plaintiff to prepare for full-blown litigation even while in the midst of settlement negotiations that ultimately resulted in the consent decree. The settlement negotiations here were clearly prompted and encouraged by plaintiff's readiness to litigate its claims. Additionally, my conclusion is buttressed by plaintiff's three affiants, who all conclude that the hours expended in this action are reasonable and of a type normally billed to a client in the commercial context.

Lastly, I have reviewed plaintiff's statement of costs incurred in this action, and I conclude that all these costs are reasonable and of a type normally billed to a client in the commercial context. Therefore, taking into account the excellent results obtained by plaintiff's counsel in light of Congress' intent to foster private enforcement actions, I award to plaintiff's counsel, the Sierra Club Legal Defense Fund, the following fees and costs:

1. Fern Shepard—  118.45 hrs. × $155 =  $18,359.75
2. Arne Leonard—  36.5 hrs. × $72.50 =  $2,646.25
3. Costs—                         =  $187.50
                          TOTAL =  $21,193.50

Accordingly, IT IS ORDERED THAT:

(1) Plaintiff's motion for attorneys' fees and costs is GRANTED;

(2) Defendant shall pay to plaintiff's counsel, the Sierra Club Legal Defense Fund, $21,193.50.