HALLSTROM ET UX. *v.* TILLAMOOK COUNTY

No. 88–42.   Argued October 4, 1989—Decided November 7, 1989

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, BLACKMUN, STEVENS, SCALIA, and KENNEDY, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which BRENNAN, J., joined, *post*, p. 33.

*Kim Buckley* argued the cause for petitioners. With him on the briefs was *Michael J. Esler*.

*I. Franklin Hunsaker* argued the cause for respondent. With him on the brief was *James G. Driscoll*.

*Brian J. Martin* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Starr, Acting Assistant Attorney General Carr, Deputy Solicitor General Wallace, Anne S. Almy,* and *John T. Stahr.**

JUSTICE O'CONNOR delivered the opinion of the Court.

The citizen suit provision of the Resource Conservation and Recovery Act of 1976 (RCRA), 90 Stat. 2825, as amended, 42 U. S. C. § 6972 (1982 ed. and Supp. V), permits individuals to commence an action in district court to enforce waste disposal regulations promulgated under the Act. At least 60 days before commencing suit, plaintiffs must notify the alleged violator, the State, and the Environmental Protection Agency (EPA) of their intent to sue. 42 U. S. C. § 6972(b)(1).

---

*\*Michael Traynor* filed a brief for the Sierra Club et al. as *amici curiae* urging reversal.

This 60-day notice provision was modeled upon § 304 of the Clean Air Amendments of 1970, 84 Stat. 1706, as amended, 42 U. S. C. § 7604 (1982 ed.). Since 1970, a number of other federal statutes have incorporated notice provisions patterned after § 304.[1] In this case, we must decide whether compliance with the 60-day notice provision is a mandatory precondition to suit or can be disregarded by the district court at its discretion.

## I

Petitioners own a commercial dairy farm located next to respondent's sanitary landfill. In April 1981, believing that the landfill operation violated standards established under RCRA, petitioners sent respondent written notice of their intention to file suit. A year later, petitioners commenced this action. On March 1, 1983, respondent moved for summary judgment on the ground that petitioners had failed to notify Oregon's Department of Environmental Quality (DEQ) and

---

[1] See, e. g., § 505(b) of the Federal Water Pollution Control Act (Clean Water Act), 33 U. S. C. § 1365(b) (1982 ed.); § 310(d)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U. S. C. § 9659(d)(1) (1982 ed., Supp. V); § 105(g)(2) of the Marine Protection, Research, and Sanctuaries Act of 1972, 33 U. S. C. § 1415(g)(2) (1982 ed.); § 12(b) of the Noise Control Act of 1972, 42 U. S. C. § 4911(b) (1982 ed.); § 16(b) of the Deepwater Port Act of 1974, 33 U. S. C. § 1515(b) (1982 ed.); § 1449(b) of the Safe Drinking Water Act, 42 U. S. C. § 300j–8(b) (1982 ed.); § 520(b) of the Surface Mining Control and Reclamation Act of 1977, 30 U. S. C. § 1270(b) (1982 ed.); § 20(b) of the Toxic Substances Control Act, 15 U. S. C. § 2619(b); § 11(g)(2) of the Endangered Species Act of 1973, 16 U. S. C. § 1540(g)(2); § 23(a)(2) of the Outer Continental Shelf Lands Act Amendments of 1978, 43 U. S. C. § 1349(a)(2) (1982 ed.); § 11(b)(1) of the Act to Prevent Pollution from Ships, 33 U. S. C. § 1910(b)(1) (1982 ed.); § 117(b) of the Deep Seabed Hard Mineral Resources Act, 30 U. S. C. § 1427(b) (1982 ed.); § 326(d) of the Emergency Planning and Community Right-To-Know Act of 1986, 42 U. S. C. § 11046(d) (1982 ed., Supp. V); § 335(b) of the Energy Policy and Conservation Act, 42 U. S. C. § 6305(b) (1982 ed.); § 19(b) of the Natural Gas Pipeline Safety Act Amendments of 1976, 49 U. S. C. App. § 1686(b) (1982 ed.); and § 114(b) of the Ocean Thermal Energy Conversion Act of 1980, 42 U. S. C. § 9124(b) (1982 ed.).

the EPA of their intent to sue, as required by § 6972(b)(1). Respondent claimed that this failure to comply with the notice requirement deprived the District Court of jurisdiction. On March 2, 1983, petitioners notified the agencies of the suit.

The District Court denied respondent's motion. It reasoned that petitioners had cured any defect in notice by formally notifying the state and federal agencies on March 2, 1983. The agencies would then have 60 days to take appropriate steps to cure any violation at respondent's landfill. The court noted that the purpose of the notice requirement was to give administrative agencies an opportunity to enforce environmental regulations. In this case, neither the state nor the federal agency expressed any interest in taking action against respondent. Therefore, the court concluded that dismissing the action at this stage would waste judicial resources. Civ. No. 82–481 (Ore., Apr. 22, 1983).

After the action proceeded to trial, the District Court held that respondent had violated RCRA. The court ordered respondent to remedy the violation but refused to grant petitioners' motion for injunctive relief. Civ. No. 82–481JU (Sept. 30, 1985). In a later order, the District Court denied petitioners' request for attorney's fees. Petitioners appealed both rulings; respondent cross-appealed from the denial of its summary judgment motion.

The Court of Appeals for the Ninth Circuit concluded that petitioners' failure to comply with the 60-day notice requirement deprived the District Court of subject matter jurisdiction. Relying on the plain language of § 6972(b)(1), the Court of Appeals determined that permitting the plaintiff to proceed without giving notice would constitute "'judicial amendment'" of a clear statutory command. 844 F. 2d 598, 600 (1987), quoting Garcia v. Cecos Int'l, Inc., 761 F. 2d 76, 78 (CA1 1985) (citation omitted). The Court of Appeals also determined that strict construction of the notice requirement would best further the goal of giving environmental agencies,

rather than courts, the primary responsibility for enforcing RCRA. 844 F. 2d, at 601. Therefore, the Court of Appeals remanded the action to the District Court with instructions to dismiss. We granted certiorari to resolve the conflict among the Courts of Appeals regarding the correct interpretation of the notice provision.[2] 489 U. S. 1077 (1989).

## II

As we have repeatedly noted, "the starting point for interpreting a statute is the language of the statute itself." *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102, 108 (1980). Section 6972(a)(1) permits any person to commence a civil action against an alleged violator of regulations established under RCRA "[except] as provided in subsection (b)." Subsection (b)(1) states:

"(b) Actions prohibited.

"No action may be commenced under paragraph (a)(1) of this section—

"(1) prior to sixty days after the plaintiff has given notice of the violation (A) to the Administrator [of the EPA]; (B) to the State in which the alleged violation occurs; and (C) to any alleged violator of such permit, stand-

---

[2] The Courts of Appeals for the First and Seventh Circuits, as well as the Court of Appeals for the Ninth Circuit in this case, have construed the notice provision as a mandatory prerequisite for suit. See, *e. g., Garcia* v. *Cecos Int'l, Inc.*, 761 F. 2d 76 (CA1 1985) (construing the notice provision in RCRA); *Highland Park* v. *Train*, 519 F. 2d 681, 690–691 (CA7 1975), cert. denied, 424 U. S. 927 (1976) (construing the notice provision in the Clean Air Amendments of 1970). The Court of Appeals for the Third Circuit reached a different conclusion, holding that the notice requirement is satisfied if the proper parties had notice in fact of the alleged violations more than 60 days before the suit was filed, see, *e. g., Proffitt* v. *Bristol Commissioners*, 754 F. 2d 504, 506 (1985) (construing the notice provisions in the Clean Water Act and RCRA), or if the District Court stayed the proceedings for 60 days, see *Pymatuning Water Shed Citizens for Hygienic Environment* v. *Eaton*, 644 F. 2d 995, 996–997 (1981) (construing the notice provision in the Clean Water Act).

.

ard, regulation, condition, requirement, or order . . . ."
42 U. S. C. § 6972(b)(1) (1982 ed.).

The language of this provision could not be clearer. A citizen may not commence an action under RCRA until 60 days after the citizen has notified the EPA, the State in which the alleged violation occurred, and the alleged violator. Actions commenced prior to 60 days after notice are "prohibited." Because this language is expressly incorporated by reference into § 6972(a), it acts as a specific limitation on a citizen's right to bring suit. Under a literal reading of the statute, compliance with the 60-day notice provision is a mandatory, not optional, condition precedent for suit.

Petitioners do not contend that the language of this provision is ambiguous; rather, they assert that it should be given a flexible or pragmatic construction. Thus, petitioners argue that if a suit commenced without proper notice is stayed until 60 days after notice had been given, the District Court should deem the notice requirement to be satisfied. See *Pymatuning Water Shed Citizens for Hygienic Environment* v. *Eaton*, 644 F. 2d 995, 996–997 (CA3 1981). According to petitioners, a 60-day stay would serve the same function as delaying commencement of the suit: it would give the Government an opportunity to take action against the alleged violator and it would give the violator the opportunity to bring itself into compliance.

Whether or not a stay is in fact the functional equivalent of a precommencement delay, such an interpretation of § 6972(b) flatly contradicts the language of the statute. Under Rule 3 of the Federal Rules of Civil Procedure, "[a] civil action is commenced by filing a complaint with the court." Reading § 6972(b)(1) in light of this Rule, a plaintiff may not file suit before fulfilling the 60-day notice requirement. Staying judicial action once the suit has been filed does not honor this prohibition. Congress could have excepted parties from complying with the notice or delay requirement; indeed, it carved out such an exception in its 1984 amendments to

RCRA. See, *e. g.*, 42 U. S. C. § 6972(b)(1)(A) (1982 ed., Supp. V) (abrogating the 60-day delay requirement when there is a danger that hazardous waste will be discharged). RCRA, however, contains no exception applicable to petitioners' situation; we are not at liberty to create an exception where Congress has declined to do so.

Petitioners further argue that under our decision in *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 393 (1982), RCRA's 60-day notice provision should be subject to equitable modification and cure. In *Zipes*, we held that the timely filing of a charge of discrimination with the Equal Employment Opportunity Commission, as required under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e–5(e) (1982 ed.) ("[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . "), was not a jurisdictional prerequisite to suit but was subject to waiver, estoppel, and equitable tolling. 455 U. S., at 393. This decision does not help petitioners. First, as we noted in *Zipes*, both the language and legislative history of § 2000e–5(e) indicate that the filing period operated as a statute of limitations. 455 U. S., at 393–394. The running of such statutes is traditionally subject to equitable tolling. See, *e. g.*, *Honda* v. *Clark*, 386 U. S. 484, 501 (1967) (holding that where consistent with the overall congressional purpose, a "traditional equitable tolling principle" should be applied to a statutory limitations period). Unlike a statute of limitations, RCRA's 60-day notice provision is not triggered by the violation giving rise to the action. Rather, petitioners have full control over the timing of their suit: they need only give notice to the appropriate parties and refrain from commencing their action for at least 60 days. The equities do not weigh in favor of modifying statutory requirements when the procedural default is caused by petitioners' "failure to take the minimal steps necessary" to preserve their claims.

*Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454, 466 (1975).

Nor can we excuse petitioners' failure on the ground that "a technical reading [of § 6972] would be 'particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.'" *Zipes* v. *Trans World Airlines, Inc., supra,* at 397, quoting *Love* v. *Pullman Co.,* 404 U. S. 522, 527 (1972). While the initial charge in a Title VII proceeding is normally filed by an aggrieved individual, see § 2000e–5(b), citizen suits under RCRA are like any other lawsuit, generally filed by trained lawyers who are presumed to be aware of statutory requirements. (Indeed, counsel for petitioners in this case admitted at oral argument that he knew of the notice provisions but inadvertently neglected to notify the state and federal agencies. Tr. of Oral Arg. 3–4.) Under these circumstances, it is not unfair to require strict compliance with statutory conditions precedent to suit.

Petitioners next contend that a literal interpretation of the notice provision would defeat Congress' intent in enacting RCRA; to support this argument, they cite passages from the legislative history of the first citizen suit statute, § 304 of the Clean Air Amendments of 1970, indicating that citizen suits should be encouraged. See S. Rep. No. 91–1196, pp. 36–37 (1970), 1 Senate Committee on Public Works, 93d Cong., 2d Sess., A Legislative History of the Clean Air Amendments of 1970, pp. 436–437 (Comm. Print 1974). This reliance on legislative history is misplaced. We have held that "[a]bsent a clearly expressed legislative intention to the contrary," the words of the statute are conclusive. *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.,* 447 U. S., at 108. Nothing in the legislative history of the citizen suit provision militates against honoring the plain language of the notice requirement. Nor is this one of the "'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of

its drafters.'" *United States* v. *Ron Pair Enterprises, Inc.*, 489 U. S. 235, 242 (1989), quoting *Griffin* v. *Oceanic Contractors, Inc.*, 458 U. S. 564, 571 (1982). Rather, the legislative history indicates an intent to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits. See, *e. g.*, 116 Cong. Rec. 32927 (1970) (comments of Sen. Muskie); see also Note, Notice by Citizen Plaintiffs in Environmental Litigation, 79 Mich. L. Rev. 299, 301–307 (1980) (reviewing the legislative history of the Clean Air Amendments of 1970). Requiring citizens to comply with the notice and delay requirements serves this congressional goal in two ways. First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits. See *Gwaltney of Smithfield, Inc.* v. *Chesapeake Bay Foundation, Inc.*, 484 U. S. 49, 60 (1987) ("The bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action"). In many cases, an agency may be able to compel compliance through administrative action, thus eliminating the need for any access to the courts. See 116 Cong. Rec. 33104 (1970) (comments of Sen. Hart). Second, notice gives the alleged violator "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." *Gwaltney, supra*, at 60. This policy would be frustrated if citizens could immediately bring suit without involving federal or state enforcement agencies. Giving full effect to the words of the statute preserves the compromise struck by Congress.

Petitioners next assert that giving effect to the literal meaning of the notice provisions would compel "absurd or futile results." *United States* v. *American Trucking Assns., Inc.*, 310 U. S. 534, 543 (1940). In essence, petitioners make two arguments. First, petitioners, with *amici*,

contend that strictly enforcing the 60-day delay provision would give violators an opportunity to cause further damage or actually accomplish the objective that the citizen was attempting to stop. See, *e. g.*, *Save Our Sound Fisheries Assn.* v. *Callaway*, 429 F. Supp. 1136, 1142–1145 (RI 1977) (Army Corps of Engineers violated three environmental statutes in order to award dredging contract before citizen suit to enjoin dredging could commence). Similarly, they assert that courts would be precluded from giving essential temporary injunctive relief until 60 days had elapsed. Although we do not underestimate the potential damage to the environment that could ensue during the 60-day waiting period, this problem arises as a result of the balance struck by Congress in developing the citizen suit provisions. Congress has addressed the dangers of delay in certain circumstances and made exceptions to the required notice periods accordingly. See, *e. g.*, the Clean Water Act, as added, 86 Stat. 888, 33 U. S. C. §§ 1365(b) and 1317(a) (1982 ed.) (citizen suits may be brought immediately in cases involving violations of toxic pollutant effluent limitations); the Clean Air Amendments of 1970, 84 Stat. 1706, 42 U. S. C. § 7604(b) (1982 ed.) (citizen suits may be brought immediately in cases involving stationary-source emissions standards and other specified compliance orders). Moreover, it is likely that compliance with the notice requirement will trigger appropriate federal or state enforcement actions to prevent serious damage.

Second, petitioners argue that a strict construction of the notice provision would cause procedural anomalies. For example, petitioners contend that if a citizen notified Government agencies of a violation, and the agencies explicitly declined to act, it would be pointless to require the citizen to wait 60 days to commence suit. While such a result may be frustrating to the plaintiff, it is not irrational: as the Court of Appeals for the First Circuit noted, "[p]ermitting immediate suit ignores the possibility that a violator or agency may

change its mind as the threat of suit becomes more imminent." *Garcia* v. *Cecos Int'l, Inc.*, 761 F. 2d, at 82.

In sum, we conclude that none of petitioners' arguments requires us to disregard the plain language of § 6972(b). "[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco Corp.* v. *Silver*, 447 U. S. 807, 826 (1980). Therefore, we hold that the notice and 60-day delay requirements are mandatory conditions precedent to commencing suit under the RCRA citizen suit provision; a district court may not disregard these requirements at its discretion. The parties have framed the question presented in this case as whether the notice provision is jurisdictional or procedural. In light of our literal interpretation of the statutory requirement, we need not determine whether § 6972(b) is jurisdictional in the strict sense of the term. See *Fair Assessment in Real Estate Assn., Inc.* v. *McNary*, 454 U. S. 100, 137 (1981) (BRENNAN, J., concurring in judgment) ("In 1937 the requirement of exhaustion of state administrative remedies was certainly a mandatory precondition to suit, and in that sense a 'jurisdictional prerequisite'").

As a general rule, if an action is barred by the terms of a statute, it must be dismissed. Thus in *Baldwin County Welcome Center* v. *Brown*, 466 U. S. 147 (1984), we approved the District Court's determination that a claimant who failed to file a complaint within the 90-day statutory time period mandated by Title VII, 42 U. S. C. § 2000e–5(f)(1) (1982 ed.), had forfeited her right to pursue her claim. Accordingly, we rejected the Court of Appeals for the Eleventh Circuit's conclusion that under the "'generous'" interpretation required by the remedial nature of Title VII, claimant's filing of a right-to-sue letter had tolled the 90-day period. 466 U. S., at 149. But cf. *Oscar Mayer & Co.* v. *Evans*, 441 U. S. 750, 764–765, and n. 13 (1979) (where requiring dismissal and refiling "would serve no purpose other than the creation of an addi-

tional procedural technicality," a district court may comply with § 14(b) of the Age Discrimination in Employment Act of 1967, 81 Stat. 607, 29 U. S. C. § 633(b) (1982 ed.), by holding an action in abeyance during the pendency of a mandatory waiting period) (citation omitted). As we have noted, dismissal of an RCRA suit serves important federal goals, see *supra*, at 29. Indeed, the EPA, the federal agency charged with enforcement of RCRA, interprets the notice provision as requiring dismissal for noncompliance. Tr. of Oral Arg. 35–39. Such a remedy for actions filed in violation of § 6972(b)(1) will further judicial efficiency; courts will have no need to make case-by-case determinations of when or whether failure to fulfill the notice requirement is fatal to a party's suit.

Petitioners urge us not to require dismissal of this action after years of litigation and a determination on the merits. They contend that such a dismissal would unnecessarily waste judicial resources. We are sympathetic to this argument. The complex environmental and legal issues involved in this litigation have consumed the time and energy of a District Court and the parties for nearly four years. Nevertheless, the factors which have led us to apply decisions nonretroactively are not present in this case. See *Chevron Oil Co.* v. *Huson,* 404 U. S. 97, 106–107 (1971). Our decision here does not establish a new rule of law; nor does it overrule clear past precedent on which litigants may have relied. Moreover, the statute itself put petitioners on notice of the requirements for bringing suit. Retroactive operation of our decision will further the congressional purpose of giving agencies and alleged violators a 60-day nonadversarial period to achieve compliance with RCRA regulations. Nor will the dismissal of this action have the inequitable result of depriving petitioners of their "right to a day in court." *Id.,* at 108. Petitioners remain free to give notice and file their suit in compliance with the statute to enforce pertinent environmental standards.

Accordingly, we hold that where a party suing under the citizen suit provisions of RCRA fails to meet the notice and 60-day delay requirements of § 6972(b), the district court must dismiss the action as barred by the terms of the statute.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Purporting to rely on "the plain language" of 42 U. S. C. § 6972(b) (1982 ed.), *ante*, at 31, the Court holds that a plaintiff's failure to comply with the 60-day prior notice provision of the Resource Conservation and Recovery Act of 1976, 42 U. S. C. § 6901 *et seq.* (1982 ed. and Supp. V), is necessarily fatal to his case. Yet even under the Court's preferred "literal reading" of the statute, *ante*, at 26, the sanction for a violation of the notice provision is anything but clear. Because requiring district courts to dismiss every action filed in violation of § 6972(b) ill serves both judicial economy and Congress' purposes in adopting RCRA, I dissent.

The relevant portion of the notice provision reads: "No action may be commenced under paragraph (a)(1) of this section—(1) prior to sixty days after the plaintiff has given notice of the violation (A) to the Administrator [of the Environmental Protection Agency (EPA)]; (B) to the State in which the alleged violation occurs; and (C) to any alleged violator . . . ." § 6972(b). There can be no doubt that the statute requires notice before a plaintiff can file a complaint. Nor is it open to debate that petitioners failed to notify the State and the EPA of the alleged violation 60 days before they filed a complaint in the District Court and thereby "commenced this action," *ante*, at 23, within the meaning of Federal Rule of Civil Procedure 3. The Court states these inescapable facts and, without any further analysis, concludes

that the sanction for violating § 6972(b) is dismissal.* The Court fails to recognize, however, that there is no necessary connection between a violation of that statute and any particular sanction for noncompliance.

That a plaintiff's failure to comply with statutory conditions precedent before bringing suit does not necessarily mandate dismissal of her action is apparent from our decision in *Oscar Mayer & Co.* v. *Evans,* 441 U. S. 750 (1979). In *Oscar Mayer,* we were asked to interpret § 14(b) of the Age Discrimination in Employment Act of 1967, 81 Stat. 607, as set forth in 29 U. S. C. § 633(b) (1982 ed.), which provides in part that "no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law." Because we found that "[t]he section is intended to give state agencies a limited opportunity to resolve problems of employment discrimination and thereby to make unnecessary, resort to federal relief by victims of the discrimination," 441 U. S., at 755, we held the 60-day notice requirement to be a "mandatory, not optional," precondition to suit. *Id.,* at 758. Compare *ante,* at 26 (holding that RCRA's 60-day notice provision "is a mandatory, not optional, condition precedent for suit").

---

*The Court might be read to suggest that failure to comply with the 60-day notice provision deprives the court of subject-matter jurisdiction, thereby obligating a court to dismiss a case filed in violation of the notice provision no matter when the defendant raises the issue—indeed, regardless of whether the defendant does so. See *ante,* at 33 (when plaintiff fails to comply with notice provision, "the district court must dismiss the action"). As there is no dispute in this case that respondent timely raised the claim that petitioners had not complied with the notice provision, the question whether a defendant may waive the notice requirement is not before the Court, and any "resolution" of the question is necessarily dictum. In any event, I do not understand the Court to express any view on whether the notice requirement is waivable. See *ante,* at 31 ("[W]e need not determine whether § 6972(b) is jurisdictional in the strict sense of the term").

We nevertheless held that, rather than dismissing the suit, the court should hold it in abeyance for 60 days after the commencement of state proceedings, after which time the grievant could continue his federal suit. 441 U. S., at 764–765. We explained:

> "Suspension of proceedings is preferable to dismissal with leave to refile. . . . 'To require a second "filing" by the aggrieved party after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality. Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.' *Love* v. *Pullman Co.*, [404 U. S. 522, 526–527 (1972)] (charge may be held in suspended animation during deferral period). For this reason, suspension pending deferral is the preferred practice in the federal courts." *Id.*, at 765, n. 13 (citations omitted).

To be sure, part of our reason for finding that a stay regime was preferable to dismissal and refiling was that laypersons filed many of the suits at issue, a circumstance that is arguably not present in RCRA cases. See *ante*, at 28 (suggesting, without evidence, that citizen suits under RCRA tend to be filed by represented parties). The point for present purposes, however, is simply that violation of a mandatory precondition to suit does not *necessarily* require dismissal of the suit. Where, as here, the statute specifies no sanction, factors extrinsic to statutory language enter into the decision as to what sanction is appropriate. See also *United States* v. *Robinson*, 361 U. S. 220, 223–224 (1960) (in determining whether court is deprived of jurisdiction over appeal when notice of appeal is not timely filed and when rule specifically provides that a court may not enlarge the period for filing notice of appeal, the court should make "a detailed examination of the language, judicial interpretations, and history of [the relevant rules]").

The Court's own analysis in this case makes clear that the purposes of the notice requirement would be served equally well by a court order staying proceedings for 60 days as by dismissal, and that the broader purposes of the citizen suit provision would be better served by the former. The Court identifies two purposes that Congress intended the notice requirement to serve: "First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits. . . . Second, notice gives the alleged violator 'an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit.'" *Ante*, at 29 (quoting *Gwaltney of Smithfield, Inc.* v. *Chesapeake Bay Foundation, Inc.*, 484 U. S. 49, 60 (1987)). All that is necessary to meet these concerns is a 60-day delay; whether it comes immediately before or immediately after the filing of the complaint is immaterial. Indeed, even the Court does not deny that stay and dismissal accomplish the same goals. See *ante*, at 26 (expressing no view on "[w]hether or not a stay is in fact the functional equivalent of a precommencement delay").

Furthermore, one of Congress' purposes in enacting the citizen suit provision, of which the notice requirement is a part, was to *encourage* citizen suits. See, *e. g.*, S. Rep. No. 91–1196, pp. 36–37 (1970) (legislative history of identical provision of Clean Air Amendments of 1970, 42 U. S. C. § 7604). Compare *ante*, at 29. Where Congress intends to facilitate citizen suits, and where the salutary purposes of the notice provision can be equally well served by a stay as by dismissal, a regime that requires the dismissal of a citizen suit that has "consumed the time and energy of a District Court and the parties for nearly four years," *ante*, at 32, and that has resulted in a judicial determination that respondent has violated RCRA, *ante*, at 24, is simply inconsistent with the will of Congress.

Perhaps recognizing that repeated invocations of the statute's "plain language" do nothing to advance its analysis, the Court also offers, in support of the proposition that "[a]s a general rule, if an action is barred by the terms of a statute, it must be dismissed," *ante,* at 31, a citation to *Baldwin County Welcome Center* v. *Brown,* 466 U. S. 147 (1984). The absence in the Court's opinion of a quotation from *Baldwin County Welcome Center* in support of the proposition for which it is cited is no accident—the case does not stand for that proposition.    In that case, the "issue before the Court of Appeals and before this Court [was] whether the filing of a right-to-sue letter with the District Court constituted the commencement of an action" within the meaning of Federal Rule of Civil Procedure 3.    466 U. S., at 150, n. 4. Finding "no persuasive justification" for the view that what constitutes a "complaint" under Rule 3 should be different in Title VII cases than in other federal litigation, the Court reinstated the District Court's finding that a right-to-sue letter was not a "complaint."    *Id.,* at 150.    Nowhere did the Court so much as hint that it was recognizing or establishing a general rule that any action barred by the terms of a statute must be dismissed even if the statutory goals animating the rule can otherwise be served.

The Court's reasoning reduces to an unexplained assertion followed by a citation to illusory authority.    Because the Court's conclusion is not compelled by the language of the notice provision, and because Congress's twin purposes of fostering private enforcement of RCRA and of conserving judicial resources are better served by a rule permitting the district courts to stay actions such as this for 60 days rather than requiring dismissal, I dissent.