286 F.3d 1137
 ONRC ACTION and Klamath Forest Alliance, Plaintiffs-Appellants,
v.
COLUMBIA PLYWOOD, INC., Defendant-Appellee.
ONRC Action; Klamath Forest Alliance, Plaintiffs-Appellants/Cross-Appellees,
v.
Columbia Plywood, Inc., Defendant-Appellee/Cross-Appellant.
 No. 98-36233.
 No. 99-35019.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted February 17, 2000.
 Submission Withdrawn and Deferred April 6, 2000.
 Resubmitted April 9, 2002.
 Filed April 16, 2002.
 
 William Carpenter, Jr., Eugene, OR, for the appellants-cross-appellees.
 Karen O'Casey, Portland, OR, for the appellee-cross-appellant.
 Appeal from the United States District Court for the District of Oregon; Michael R. Hogan, District Judge, Presiding. D.C. No. CV-97-03087-CO.
 Before: REINHARDT, THOMPSON, and T.G. NELSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge.
 
 
 1
 In 1997, Plaintiffs ONRC Action and Klamath Forest Alliance (collectively "ONRC") brought a citizen lawsuit under the Clean Water Act against defendant Columbia Plywood. ONRC's claims centered upon its contention that Columbia Plywood's National Pollution Discharge Elimination System ("NPDES") permit expired in 1989 or 1994 and that, therefore, Columbia Plywood's continued discharge of pollutants into the Klamath River in Oregon was unlawful.
 
 
 2
 The district court exercised jurisdiction over ONRC's first claim, which alleged that Columbia Plywood's NPDES permit was invalid due to Columbia Plywood's failure to file a timely renewal application. Under O.A.R. § 340-045-0030(1), permit renewal requests must be filed at least 180 days before a permit expires. ONRC alleged that Columbia Plywood filed its 1989 permit renewal request substantially less than 180 days before its 1984 permit expired. The district court granted summary judgment in favor of Columbia Plywood on this claim. The court held that, although the permit renewal request was tardy, Oregon's Department of Environmental Quality ("DEQ") had validly waived the 180-day time limitation by accepting the request.
 
 
 3
 ONRC asserted two additional claims. It alleged that the permit renewal was invalid because DEQ lacked authority to renew NPDES permits, and that even if DEQ had such authority, any renewal expired in 1994 when Columbia Plywood failed to renew its 1989 renewal request. The district court held that it lacked subject matter jurisdiction over these two claims because they were not properly raised in ONRC's 60-day citizen suit notice.[1] See 33 U.S.C. § 1365(b); 40 C.F.R. § 135.3. The court subsequently denied Columbia Plywood's motion for attorney fees.
 
 
 4
 ONRC appealed the district court's summary judgment rejecting its first claim on the merits, and dismissing its second and third claims for lack of subject matter jurisdiction. Columbia Plywood cross-appealed the denial of its request for attorney fees. After hearing argument, we deferred submission and certified two questions to the Oregon Supreme Court: (1) Whether DEQ had authority under Oregon law to waive the 180-day time limit for filing a renewal application, as set forth in O.A.R. § 340-045-0030(1); and (2) If it did not, whether ONRC had to show nonetheless that it was prejudiced by DEQ's action in accepting the untimely renewal application. The Oregon Supreme Court accepted certification, reaching only the first question and concluding that DEQ had the authority to waive the 180-day time limitation of O.A.R. § 340-045-0030(1). We have received supplemental briefing from the parties as to the effect of that decision, and now affirm the judgment of the district court, and its denial of Columbia Plywood's motion for attorney fees.
 
 
 5
 * The Federal Clean Water Act prohibits the discharge of pollutants into a waterway without an NPDES permit. 33 U.S.C. § 1311(a). Upon certification, a state may administer the NPDES permit program. Id. § 1342(b). In Oregon, DEQ administers and enforces Oregon's environmental quality laws, including the issuance of NPDES permits. O.R.S. § 468.035-468.045.
 
 
 6
 On December 20, 1984, DEQ issued Columbia Plywood an NPDES permit allowing Columbia Plywood to discharge pollutants into the Klamath River. That permit stated that it would expire on November 30, 1989. Pursuant to O.A.R. § 340-045-0030(1), any renewal request for that permit had to be signed by Columbia Plywood and received by DEQ at least 180 days before the permit's expiration.
 
 
 7
 On August 21, 1989, substantially less than 180 days before the permit's expiration date, DEQ received an unsigned and undated application for renewal. On August 24, 1989, DEQ informed Columbia Plywood of the application's deficiencies and told Columbia Plywood that, if it completed the missing information, DEQ would accept the renewal application and extend Columbia Plywood's 1984 Permit until DEQ took final action on that application. Columbia Plywood signed the application, dated it August 29, 1989, and returned it to DEQ.
 
 
 8
 At the time this lawsuit was filed in 1997, DEQ had yet to take final action on Columbia Plywood's August 29, 1989 application. Columbia Plywood, however, continued to discharge pollutants into the Klamath River. It relied upon the continuing shield of O.R.S. § 183.430(1), which states:
 
 
 9
 In the case of any license which must be periodically renewed, where the licensee has made timely application for renewal in accordance with the rules of the agency, such license shall not be deemed to expire, despite any stated expiration date thereon, until the agency concerned has issued a formal order of grant or denial of such renewal.
 
 
 10
 In July of 1997, before filing this lawsuit, ONRC sent Columbia Plywood a 60-day notice of intent to file a Federal Clean Water Act citizen suit as required by 33 U.S.C. § 1365 and 40 C.F.R. § 135.3. In this notice, ONRC asserted that Columbia Plywood had been discharging pollutants into the Klamath River without a valid NPDES permit since November 30, 1989, specifically asserting that the permit was invalid because Columbia Plywood had not applied to renew it within 180 days of its expiration date. ONRC summarized its allegation as follows:
 
 
 11
 "Attached as Exhibit A to this Notice is a copy of Columbia Plywood Corporation's Renewal Application, indicating its filing by Oregon DEQ on August 21, 1989. Further, the application was signed on August 29, 1989. Both dates are not within the 180 days prior to expiration of Columbia Plywood Corporation's NPDES permit on November 30, 1989 required by OAR 340-045-0030. Therefore, the permit application is not timely filed by state law and not qualified for the ongoing discharge exemption for expired permits."
 
 
 12
 (emphasis added). No other defects in the permit, or related to the permit, were specified.
 
 
 13
 On November 1, 1997, ONRC filed a citizen suit against Columbia Plywood in the United States District Court for the District of Oregon. In its complaint, ONRC alleged not just that the NPDES permit was invalid due to the untimely renewal application, but also that DEQ lacked authority to renew NPDES permits and that, even if DEQ had such authority, Columbia Plywood had to reapply for renewal in 1994 and it had not done so.
 
 
 14
 Columbia Plywood moved for summary judgment. In recommending that the district court grant Columbia Plywood's motion, the magistrate judge recommended that the court hold that it did not have jurisdiction over ONRC's second and third claims. These claims alleged that DEQ could not extend the 1984 Permit beyond its original five-year term, and that, in any case, Columbia Plywood had to renew the extension of its 1984 Permit in 1994. The magistrate judge considered ONRC's first claim on the merits, and recommended that the district court hold that DEQ acted within its authority in waiving the 180-day time limit of O.A.R. § 340-045-0030(1); as a result, the untimely filing did not invalidate Columbia Plywood's permit. The district court reviewed de novo the magistrate judge's recommendations, accepted them, and granted summary judgment in favor of Columbia Plywood. The district court also denied Columbia Plywood's request for attorney fees. This appeal followed.
 
 
 15
 The two questions we certified to the Supreme Court of Oregon, and which it accepted, were:
 
 
 16
 1. Can the Oregon Department of Environment Quality waive Oregon Administrative Rule § 340-045-0030(1), which requires that an applicant file a renewal application 180 days before its National Pollutant Discharge Elimination System ("NPDES") permit expires, by accepting a renewal application filed less than 180 days before the NPDES permit's expiration date? If not, then:
 
 
 17
 2. Is the Oregon Department of Environmental Quality's extension of the NPDES permit beyond its original five-year term, pursuant to Oregon Administrative Rule § 340-045-0040, invalid because the waiver is invalid, or must the waiver have prejudiced the plaintiffs before the waiver can be held invalid?
 
 
 18
 The court answered the first question in ONRC Action v. Columbia Plywood, Inc., 332 Or. 216, 26 P.3d 142 (2001), holding that "the answer to the first certified question is that DEQ has the legal authority to accept and process permit renewal applications that do not meet the 180-day filing requirement in OAR 340-045-0030(1) (1989)." ONRC Action, 26 P.3d at 147. Because of its answer to the first question, the court did not reach the second question. Id.
 
 
 19
 Subsequently, at our request, the parties provided supplementary briefs on what issues in this case still required resolution in light of the Oregon Supreme Court's holding. ONRC argued that three issues remained before this court: (1) Whether DEQ's waiver of O.A.R. § 340-045-0030(1) was valid to the degree it caused the untimely permit extension application to act as an indefinite shield; (2) Whether ONRC's notice covered its claims that DEQ cannot renew NPDES permits and that, even if it can, any renewal had to be accomplished in 1994; and (3) Whether the district court abused its discretion by refusing to award attorney fees. Columbia Plywood argued that the waiver issue was resolved by the Oregon Supreme Court, but agreed that the latter two issues were still before us.
 
 II
 
 20
 We first consider ONRC's argument that the Oregon Supreme Court's decision has failed to resolve the validity of DEQ's acceptance of Columbia Plywood's late renewal application. ONRC contends that it never solely argued that DEQ could not accept a late application under O.A.R. § 340-045-0030(1), but rather its argument was that DEQ lacked authority to make a late renewal application subject to the continuing shield of O.R.S. § 183.430(1). Under O.R.S. § 183.430(1), a "timely application for renewal in accordance with the rules of the agency" is shielded from expiration until the application is acted upon by DEQ, thereby allowing for the continued discharge of pollutants while a renewal application is being processed.
 
 
 21
 Whether we analyze this issue solely under DEQ's waiver of the 180-day filing requirement of O.A.R. § 340-045-0030(1), or in conjunction with the effect of such a waiver on the continuing shield created by O.R.S. § 183.430(1), the Oregon Supreme Court's decision forecloses the possibility that Columbia Plywood's application can be treated as untimely once DEQ waived the 180-day time limit of O.A.R. § 340-045-0030(1). The Oregon Supreme Court held that "the answer to the first certified question is that DEQ has the legal authority to accept and process permit renewal applications that do not meet the 180-day filing requirement in OAR 340-045-0030(1) (1989)." ONRC Action, 26 P.3d at 147 (Or.2001) (emphasis added). The ineluctable conclusion from this holding is that DEQ may effectively make an untimely application timely for the purpose of triggering the continuing shield of O.R.S. § 183.430(1). If it could not, then the waiver would be ineffective, which would be contrary to the express language of the continuing shield that gives DEQ time to complete its processing of a permit application without having the permit expire during the processing period. Hence, once DEQ acted within its authority by accepting Columbia Plywood's tardy permit, the shield of O.R.S. § 183.430(1) was triggered and has continued during the time DEQ has taken to process the renewal application.
 
 
 22
 We want, however, to be specific in defining the scope of this holding. ONRC may, or may not, have a potentially viable claim regarding the legality of the indefinite continuing shield upon which Columbia Plywood relies. That continuing shield has permitted Columbia Plywood to discharge pollutants into the Klamath River for considerably more years than Columbia Plywood's original permit. The issue, however, of whether such a continuing shield can be invoked indefinitely was not properly raised by ONRC's 60-day citizen suit notice. Thus, our opinion does not address the legal merits of that issue, and should be read neither as precedent regarding the issue nor as a resolution of the issue between the parties. We merely hold that, consistent with the Oregon Supreme Court's answer to our certified question, DEQ acted within its authority by accepting Columbia Plywood's untimely renewal application, an act which had the effect of placing Columbia Plywood's renewal application on a par with any timely filed renewal application.
 
 III
 
 23
 We turn now to the question of whether ONRC's 60-day citizen suit notice properly covered its remaining two claims, namely that: (1) DEQ could not renew a NPDES permit beyond its original five-year term; and (2) even if it could, Columbia Plywood had to renew its renewal application in 1994. Having reviewed the citizen suit notice de novo, see Natural Resources Defense Council v. Southwest Marine, Inc., 236 F.3d 985, 996 (9th Cir.2000), cert. denied sub. nom Southwest Marine, Inc. v. San Diego BayKeeper, 533 U.S. 902, 121 S.Ct. 2242, 150 L.Ed.2d 230 (2001), we conclude that the notice does not properly cover these claims, and as a result the district court correctly dismissed them.
 
 
 24
 The Clean Water Act allows a citizen to bring suit against an alleged violator of that Act, but requires the citizen, at least 60 days before filing suit, to notify the alleged violator, the State, and the EPA of its intention to sue. See 33 U.S.C. § 1365. The applicable regulation provides:
 
 
 25
 Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.
 
 
 26
 40 C.F.R. § 135.3(a).
 
 
 27
 In Hallstrom v. Tillamook County, 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989), the Supreme Court held that the plaintiffs' failure to provide the state and federal agencies with 60-days' advance notice of their intention to file a citizen suit under the Resource Conservation and Recovery Act deprived the district court of subject matter jurisdiction.[2] The Court stated that strict compliance with the requirements of the notice provision was required. Id. at 28, 110 S.Ct. 304. It explained that a literal interpretation of the notice provision furthers two purposes: (1) it allows government entities the first opportunity to enforce environmental regulations; and (2) it gives the alleged violator a chance to comply with the environmental laws, thereby making a citizen suit unnecessary. Id. at 29, 110 S.Ct. 304.
 
 
 28
 Where, as here, the issue is whether the notice the plaintiffs gave the defendant was sufficient to inform the defendant of the alleged violation(s), we ask whether, "[i]n practical terms, the notice [was] sufficiently specific to inform the alleged violator about what it [was] doing wrong, so that it [knew] what corrective actions [would] avert a lawsuit." Natural Resources Defense Council, 236 F.3d at 996 (quoting Atlantic States Legal Found., Inc. v. Stroh Die Casting, Co., 116 F.3d 814, 819 (7th Cir.1997)); see also Southwest Center for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 522 (9th Cir.1998) (stating that the plaintiff must "provide sufficient information of a violation so that the [recipients] could identify and attempt to abate the violation.").
 
 
 29
 We conclude that ONRC's 60-day citizen suit notice was not sufficient to alert a reasonable defendant to the two Clean Water Act claims dismissed by the district court. ONRC's notice informed Columbia Plywood that ONRC intended to contest the validity of Columbia Plywood's permit, and that the solution would be to get a new permit. However, in quite explicit language, ONRC's notice put forward a particular theory on which the permit was invalid — that the permit renewal application was untimely. Upon receiving the 60-day notice, Columbia Plywood could well have believed, as the Oregon Supreme Court ultimately ruled, that DEQ was acting within its authority by waiving the 180-day filing period of O.A.R. § 340-045-0030(1). Because timeliness was the sole challenge raised in the notice, it was reasonable to conclude that no action in response to ONRC's 60-day notice was required.
 
 
 30
 ONRC argues that because all of its claims, whether or not they are specified in the 60-day notice, challenge the validity of Columbia Plywood's permit, and could thus have been abated by Columbia Plywood obtaining a new permit, the notice was sufficiently specific to inform Columbia Plywood about what it was doing wrong, so that it knew what corrective action to take. See Natural Resources Defense Council, 236 F.3d at 996. We disagree. Columbia Plywood was not required to speculate as to all possible attacks on its NPDES permit that might be added to a citizen suit when the 60-day notice so specifically identified only one attack based upon timeliness of the renewal application.
 
 
 31
 Our decision is also based upon the effect of the notice on state and federal administrative agencies. An important interconnection exists between the proper exercise of our jurisdiction over claims raised in a Clean Water Act citizen suit and the role of federal and state agencies in monitoring such suits. See Hallstrom, 493 U.S. at 29, 110 S.Ct. 304. Had ONRC's notice specified its other theories, either Oregon or the EPA might well have decided that those theories had sufficient merit to call for agency action. Were we to exercise jurisdiction over such claims when they were not disclosed by the citizen suit notice, we would usurp the right of the applicable governmental agencies to evaluate and act upon the merits of the claims prior to judicial review.
 
 
 32
 We conclude that the second and third claims alleged in ONRC's complaint were not properly raised in its 60-day citizen suit notice; thus, the district court correctly held that it lacked subject matter jurisdiction over those claims.
 
 IV
 
 33
 On cross-appeal, Columbia Plywood challenges the district court's denial of its motion for attorney fees. ONRC's complaint raised an unsettled, non-frivolous question of Oregon law. See ONRC Action v. Columbia Plywood, Inc., 332 Or. 216, 26 P.3d 142 (2001) (recognizing that DEQ's authority to accept Columbia Plywood's untimely renewal application was a novel question of Oregon law). The district court did not abuse its discretion by denying the request for attorney fees. Razore v. Tulalip Tribes of Washington, 66 F.3d 236, 240-41 (9th Cir.1995).
 
 
 34
 AFFIRMED. Each side shall bear its own costs on appeal.
 
 
 
 Notes:
 
 
 [1]
 The district court also held that it lacked jurisdiction over ONRC's claim that Columbia Plywood had exceeded the effluent limits under its permit. That holding is not challenged in this appeal
 
 
 [2]
 The 60-day notice provisions under the Resource Conservation and Recovery Act and the Clean Water Act are modeled after § 304 of the Clean Air AmendmentsWashington Trout v. McCain Foods, Inc., 45 F.3d 1351, 1353 n. 3 (9th Cir.1995).
 
 
 
 35
 REINHARDT, Circuit Judge, concurring in part and dissenting in part:
 
 
 36
 I agree with the majority with respect to ONRC Action's first claim — it fails on the merits. Because I conclude, however, that ONRC Action's Notice as to its second and third claims was sufficient, and that ONRC Action should have prevailed on its third claim, I respectfully dissent in part from the portion of the opinion regarding those claims.
 
 
 37
 Under the 60-day citizen suit notice requirement of the Federal Clean Water Act, ONRC Action was required, in its Notice of Intent to Sue, to "provide sufficient information of a violation so that the [recipients] could identify and attempt to abate the violation." Southwest Center for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 522 (9th Cir.1998). See also Natural Resources Defense Council v. Southwest Marine, Inc., 236 F.3d 985, 996 (9th Cir.2000), cert denied, 533 U.S. 902, 121 S.Ct. 2242, 150 L.Ed.2d 230 (2001) ("[T]he notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit."). Although we made it clear in Southwest Center that notice must be specific, we did not suggest that the notice must disclose all the legal theories underlying the claim that a violation had occurred. The legal theories may properly be stated for the first time in the complaint or in response to a motion to dismiss. The purpose of the notice requirement is simply to "allow[ ] Government agencies to take responsibility for enforcing environmental regulations... [and] give[ ] the alleged violator `an opportunity to bring itself into complete compliance with the Act....'" Hallstrom v. Tillamook County, 493 U.S. 20, 29, 110 S.Ct. 304, 107 L.Ed.2d 237 (1990) (citations omitted). It is intended to "sufficiently alert" the respondents to "the actual violation... alleged in the complaint ... eventually filed." Southwest Center, 143 F.3d at 520-21. See Washington Trout v. McCain Foods, Inc., 45 F.3d 1351, 1354 (9th Cir.1998) ("[T]he purpose of giving a sixty-day notice is to allow the parties time to resolve their conflicts in a non-adversarial time period ... [and to] alert[ ] the appropriate state or federal agency, so [that] administrative action may initially provide the relief the parties seek before a court must become involved.").
 
 
 38
 ONRC Action's Notice of Intent to Sue fulfills the purposes of the notice requirement by clearly describing the "illegal factual activity" in which Columbia Plywood was engaged:
 
 
 39
 The Columbia Plywood Corporation has and is emitting pollution from its discharge facility into the waters of the United States without a valid National Pollutant Discharge Elimination System Permit (NPDES Permit'), which constitutes an illegal activity in violation of the FWPCA.
 
 
 40
 Notice of Intent to Sue (emphasis added). ONRC Action's contention was, in short, that Columbia Plywood did not have a valid permit. The three claims alleged in the complaint represent three alternative legal theories for why the permit under which Columbia Plywood purported to be operating was not valid. The fact that the Notice expanded on ONRC Action's basic contention by setting forth one supporting legal theory (namely that the application was not timely filed and that Columbia Plywood therefore did not qualify for the ongoing discharge exemption for expired permits), does not preclude ONRC Action from alleging in its complaint other legal theories supporting "the illegal factual activity" described in the Notice. Had the Notice simply contained the material quoted above — had it simply stated that Columbia Plywood was operating without a valid permit — it would have been sufficient. The additional material set forth in the Notice may or may not be helpful but it was not required; nor can its inclusion invalidate what would otherwise have been a lawful notice.
 
 
 41
 The Notice gave Columbia Plywood the opportunity to rectify its behavior by seeking to obtain a lawful permit if it concluded that the permit on which it was relying might be invalid. It also advised the federal and state agencies involved of ONRC Action's contention that Columbia Plywood did not have a valid permit. Notice of the particular legal theory rendering the permit invalid would not have changed Columbia Plywood's ability to avoid the litigation subsequently filed by ONRC Action; nor would it have advised the agencies of anything of which they were not already fully aware. Perhaps an explanation of the various legal theories underlying the alleged violation would have enabled Columbia Plywood to prepare more effectively to defend itself against ONRC Action's lawsuit, although even that is highly unlikely. More important, enabling an alleged polluter to defend itself more effectively against a lawsuit is not one of the objectives of the notice requirement that we have mentioned when discussing the purposes of that requirement.
 
 
 42
 Notice requirements such as the one at issue here are not procedural devices designed to place obstacles in the path of persons with legitimate claims. Rather, their purpose is to assure that parties who are the potential subjects of litigation will be treated fairly and will have an opportunity to comply with the law before action is taken against them. In some instances, it may be necessary for those intending to file lawsuits to identify the specific details of the complex environmental rules involved and the precise manner in which the violation is alleged to be taking place, so that the potential defendant will be able to discern just what action it need take. In other instances, it may be necessary for the complaining party to say only, as ONRC Action did here, "You don't have a valid permit." Then, the potential defendant can cure the violation by obtaining a valid permit. All concerned here — including the Oregon DEQ and the EPA, whom the plaintiff served with notice as required under the statute — knew that Columbia Plywood had last received a permit in 1984 and that the term of the permit was five years. All concerned knew that as of 1997 when the Notice was given, approximately 13 years had passed since the permit was obtained, and that no additional permit had been issued. All concerned knew that ONRC Action contended that Columbia Plywood no longer had a valid permit. Thus, all the notice that was due was given. To require more does not serve the purposes of the Clean Water Act, or indeed any legitimate purpose at all.
 
 
 43
 Proceeding to the substantive questions raised by the second and third claims, I conclude that the DEQ has the authority to "renew" a permit beyond its original five-year term under the continuing shield permit provision, O.R.S. § 183.430(1), and therefore that the second claim must fail.[1] Without deciding the maximum length of time that the DEQ may allow an expired permit to remain in effect, however, I would hold that a continuing shield permit may in no event last more than five years — the term of a properly issued renewal permit under OAR 340-045-0035(8). DEQ may not simply allow a continuing shield permit to remain in effect indefinitely, without acting on the pending application. In the case at bar, DEQ refused to act for almost thirteen years, and by its inaction, permitted Columbia Plywood to receive not only the equivalent of one additional NPDES permit (until 1994), but the equivalent of two additional permits. In doing so, it usurped the power of the Congress and the federal government to establish the term of an NPDES Permit, and, in my view, acted in an impermissible and unlawful manner.
 
 
 44
 For the foregoing reasons, I would reach the second and third claims and reverse on the third.
 
 
 
 Notes:
 
 
 [1]
 The applicable federal regulation permits an expired permit to remain in effect by operation of a continuing shield provision of State law. 40 C.F.R. § 122.6