UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued April 14, 2006
Decided June 6, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-3199

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　*Plaintiff-Appellee,*<br><br>　　　v.<br><br>PAUL A. HEINRICH,<br>　　　　　*Defendant-Appellant.* | Appeal from the United States<br>District Court for the<br>Western District of Wisconsin<br><br>No. 03 C 75<br><br>John C. Shabaz, *Judge.* |

**O R D E R**

　　Paul Heinrich owns nine and a half acres of land on Little Star Lake in northern Wisconsin.  A licensed pilot, Heinrich uses the property to operate a business offering "scenic seaplane rides."  Most of his land is a white cedar swamp wetland subject to state and federal regulations.

　　Heinrich's problems began when he decided he wanted to build a road from the lake upland to an aircraft hangar on his property.  Starting in 1996, he began making inquiries of various officials with the Wisconsin Department of Natural Resources (WDNR) and the Army Corps of Engineers.  At first he was honest about needing to build the road to move his seaplane.  When he was told he would be unlikely to get the necessary permits, Heinrich changed his story and said he planned to build a "logging road," which is subject to fewer restrictions.  But a

Corps official who visited the property in May 1997 told Heinrich that idea also was unlikely to fly.

In August 1997, Heinrich chose to go ahead and build the road anyway, misrepresenting to his contractor that he had the necessary approvals. Two years later, officials received a complaint, and the federal EPA began investigating. Heinrich continued to characterize the project as a "logging road" on his "silviculture hobby farm." The EPA ordered Heinrich to restore the wetlands, and when he didn't, the agency issued a notice of violation. The government eventually filed suit to enforce the order. The district court, after granting summary judgment for the government, imposed a monetary penalty and issued a remedial order. Heinrich appeals, and we review the statutory interpretation behind the district court's summary judgment decision de novo. United States v. B&W Inv. Props., 38 F.3d 362, 366 (7th Cir. 1994).

Heinrich's seaplane access road met the criteria of a Corps nationwide permit that was in effect at the time, known as "NWP 26," which allowed small projects like his with minimal environmental impacts to proceed without advance federal approval. See 33 U.S.C. § 1344(e). However, under NWP 26, projects like Heinrich's still needed a state water quality certification. See 33 C.F.R. § 330.4(c).

Heinrich's defense boils down to two arguments: that Wisconsin waived its right to require water quality certification for NWP 26 projects, or that because of bureaucratic snafus between the Corps and the WDNR, he did not get proper notice that certification was required. We must reject both arguments.

Federal regulations require that a state evaluate a Corps nationwide permit for compliance with its water quality standards. 33 C.F.R. § 330.4(c)(1). If a state denies blanket water quality certification for a particular NWP, or if the Corps deems the conditions imposed by a state to be the equivalent of a denial, then individuals seeking to proceed under a NWP must obtain individual water quality certifications.

Heinrich contends that Wisconsin waived its right to require individual water quality certifications because it did not submit valid paperwork to the Corps in time for a February 11, 1997, deadline applicable to NWPs in effect for the year 1997. The record indicates that the Corps received a FAXed copy of Wisconsin's water quality decision on the deadline, though Heinrich disputes whether the state properly followed its own procedures to make the decision legally effective by that date. At the latest, it appears the decision would have become effective on March 29, 1997, after the state comment period closed. The Corps did not reject the state's submission as untimely.

Heinrich did not raise his state procedural arguments in the district court, and so we decline to address them on appeal. See Republic Tobacco Co. v. N. Atl. Trading Co., 381 F.3d 717, 728 (7th Cir. 2004) ("We have long refused to consider arguments that were not presented to the district court in response to summary judgment motions. Appellate review is not designed to serve as an unsuccessful party's second bite at the apple--an opportunity to raise issues and arguments that were not brought forth below." (Internal citations and quotation marks omitted.)). Suffice it to say that while Wisconsin may or may not have blown a deadline set by the Corps, the Clean Water Act, which is the controlling statute here, imposes a penalty of waiver only if a state fails to act "within a reasonable period of time (which shall not exceed one year)." 33 U.S.C. § 1341(a)(1). Since the Corps issued its request for state certifications on December 13, 1996, and Wisconsin's certification was effective at the latest on March 29, 1997, the state was within the one-year statutory time frame. Heinrich cannot escape liability for his wetlands violation by arguing in retrospect that the State waived certification.

Although the Corps accepted the state's decision as timely, it determined on April 30, 1997, that the substance of Wisconsin's decision was inconsistent with the Corps' regulations, and the decision was thus interpreted as a denial of NWP certification. This meant that each applicant seeking to use NWP 26 in the state would have to obtain an individual state water quality certification. Heinrich believes the requirement should not have been applied to him because there was no official public notice, to him or anyone else, that the Corps had interpreted the state's decision as a denial of blanket certification and thus that individual water quality certifications would be needed.

The relevant regulation says only (and rather vaguely) that Corps district engineers "will take appropriate measures to inform the public of which activities, waterbodies, or regions require an individual . . . water quality certification before authorization by NWP." 33 C.F.R. § 330.4(c)(4). We might agree with Heinrich that Corps officials should have done more to let those potentially affected by the Wisconsin decision know that they had to get individual certifications. But we cannot find that the Corps' failure to do so violated any statute or regulation requiring notice by publication.

By contrast, the regulations are clear that an individual water quality certification is required where a state has denied blanket certification under a particular NWP. 33 C.F.R. § 330.4(c)(6). Nowhere do the regulations indicate that landowners are entitled to assume that blanket certification is in effect unless they're specifically told otherwise. Yet Heinrich, who has reminded us throughout his brief and oral argument that he is a practicing attorney, seems to assume that he had a legal right to go forward with his access road simply because no one ever

told him he couldn't. Rather than looking in vain for post-hoc justifications, he should have read the appropriate regulations more carefully and inquired about the status of state water quality certification requirements before he cavalierly moved forward with his project. The record indicates that Heinrich had contacts with various officials who probably could have steered him in the right direction and saved him an expensive violation--if he hadn't created confusion by trying to flim-flam them into believing that his seaplane access road was actually a "logging road," the requirements for which are covered by different policies.

Heinrich also seeks to have the government's suit against him dismissed because he was not personally served with the EPA compliance order. (He got it by certified mail.) As legal authority, he cites cases dealing with statutory requirements concerning notice of a citizen's intent to sue to enforce a government regulation, see Hallstrom v. Tillamook County, 493 U.S. 20 (1989), or over a government official's failure to perform some act or duty, see Greene v. Reilly, 956 F.2d 593 (6th Cir. 1992). But these cases have nothing to do with the mode by which an EPA administrative order is served. While the Clean Water Act specifies that such orders "shall be by personal service," 33 U.S.C. § 1319(a)(5), the record shows that Heinrich received the order, responded to it without objecting to the mode of service, and was not prejudiced by the absence of personal service. The district court did not err in finding that Heinrich thus waived strict compliance with the personal service requirement. See United States v. Myslajek, 568 F.2d 55, 57 (8th Cir. 1977).

Finally, Heinrich argues that the $75,000 penalty he was assessed, along with an order to restore his wetlands to their previous condition, were "draconian and an abuse of discretion." Our own review of the record satisfies us that the district court properly considered the relief requested by the government and Heinrich's objections to it.

The judgment of the district court is AFFIRMED.