

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-13-2007

# Player v. Motiva Entr

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1663

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Player v. Motiva Entr" (2007). *2007 Decisions.* Paper 772.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/772

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 06-1663
_____

JEFF PLAYER; CHERYL PLAYER; CHESTER J. BESARA;
SUSAN BURCAW; LEWIS BURCAW; DONALD BURTON;
JACKIE BURTON; BRIAN L. CHORZELEWSKI;
THOMAS CLAUSS; MARGARET CLAUSS;
TERRI CONCANNON; JOHN FLOLO; THOMAS HAAS;
JEFF JOHNSON; CYNTHIA JOHNSONN;
SUSAN KAMMERHOFF; MICHAEL KAMMERHOFF;
HARRY KLEMOWITZ; ELIZABETH KLEMOWITZ;
PHILLIP KRAJEWSKI; COLLEEN KRAJEWSKI;
MARK LEASON; MICHELLE LEASON; DARLEEN LITTON;
JAMES LITTON; DAVID LODI; JOSEPH MINNER;
JANICE MONAHAN; SAMUEL PALMUCCI;
KATHLEEN PALMUCCI; DANIEL RODRIGUEZ;
MARTHA RODRIGUEZ; TOM SANKIEWICZ;
TINA SANKIEWICZ; CALVIN SIMMONS;
NORMA SIMMONS; THOMAS SLONAKER;
ROSEANNE SLONAKER; BILL STEPHENSON;
DOROTHY STEPHENSON; BARBARA TANNER;
JOHN WALLACE; MARIA WALLACE; PAT WOLFENDEN;
DAVID WOLFENDEN

v.

MOTIVA ENTERPRISES, LLC, a successor
in interest to Star Enterprises;
JANE DOES 1-50; JOHN DOES 1-50, all
fictitious names for person or entities
whose identities are presently unknown

Jeff Player, Cheryl Player, Chester J. Besara;
Susan Burcaw, Lewis Burcaw, Donald Burton,
Jackie Burton, Brian L. Chorzelewski, John Flolo,
Thomas Clauss, Margaret Clauss, Terri Concannon,

Thomas Haas, Jeff Johnson, Cynthia Johnson,
Susan Kammerhoff, Michael Kammerhoff, Harry Klemowitz
Elizabeth Klemowitz, Philip Krajewski, David Lodi,
Colleen Krajewski, Mark Leason, Michelle Leason,
Joseph Minner, Janice Monahan, Samuel Palmucci,
Kathleen Palmucci, Daniel Rodriguez, Martha Rodriguez,
Tom Sankiewicz, Tina Sankiewicz, Calvin Simmons,
Norma Simmons, Thomas Slonaker, Roseanne Slonaker,
Bill Stephenson, Dorothy Stephenson, Barbara Tanner,
John Wallace, Maria Wallace, Pat Wolfenden and
David Wolfenden,

Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-03216)
District Judge: Honorable Robert B. Kugler
_____

Submitted Under Third Circuit LAR 34.1(a)
May 7, 2007

Before:  RENDELL, JORDAN, HARDIMAN, *Circuit Judges*.

(Filed: July 13, 2007)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

2

Plaintiffs, Jeff and Cheryl Player and several of their neighbors, appeal the decision of the United States District Court for the District of New Jersey granting a *Daubert* motion to exclude their damages expert, Daniel McDonald, and granting summary judgment in favor of Defendant Motiva Enterprises, LLC ("Motiva"). Plaintiffs argue that the District Court abused its discretion in finding that McDonald was not qualified and that his methodology was unreliable. They also contend that the District Court erred by not conducting a hearing before ruling on the *Daubert* motion. Alternatively, Plaintiffs argue that, even if McDonald's testimony was properly excluded, there was still sufficient evidence in the record to establish that they were injured by Motiva, and, thus, the District Court should not have granted Motiva's motion for summary judgment on Plaintiffs' negligence claim. Lastly, Plaintiffs assert that the District Court erred in dismissing their claim under the New Jersey Environmental Rights Act ("ERA"). For the following reasons, we will affirm the decision of the District Court.

I.

Plaintiffs are the current and former owners of residential properties located in Gloucester Township, New Jersey. Plaintiffs assert numerous claims against Motiva, all relating to their central allegation that, in or about April 2000, Motiva was responsible for the discharge of hazardous substances from a gasoline service station into the soil and groundwater near Plaintiffs' properties. The District Court provided an extensive review of the undisputed facts in this case, *see Player v. Motiva Enters. LLC*, No. Civ. 02-3216, 2006 WL 166452, at *1-3 (D.N.J. Jan. 20, 2006). Because we write only for the parties

3

and because the appeal challenges only the District Court's legal conclusions, we limit our discussion of the facts to those necessary to address the parties' arguments, after providing some basic background information.

Plaintiffs own twenty-seven parcels of residential property in Gloucester Township.[1]  Only one of those properties, 583 Berlin Cross Keys Road, is connected to the municipal water supply.  That property is owned by John and Maria Wallace, who admitted that their drinking water was not affected by the leak at Motiva's gasoline station.  The other twenty-six properties all draw their drinking water from potable wells connected to the Kirkwood-Cohansey Aquifer, and, unlike the Wallaces, the owners of those properties claim that Motiva has contaminated their drinking water.

Pursuant to a directive issued by the New Jersey Department of Environmental Protection ("NJDEP"), Motiva tested Plaintiffs' wells for volatile organic compounds ("VOCs") associated with gasoline.  According to the District Court's review of those test results, eighteen of the properties showed no signs of contamination, and although VOCs were detected in the wells of the other eight properties, the detected amounts were within the permissible range for potability set by the NJDEP's Ground Water Quality Standard ("GWQS").  Plaintiffs do not argue that the District Court's discussion of the test data was inaccurate.

II.

---

[1]Two of the original plaintiffs were voluntarily dismissed from the case; one has passed away.

4

The District Court granted summary judgment in favor of Motiva with respect to all of Plaintiffs' claims. On appeal, however, Plaintiffs challenge only the District Court's decisions with respect to the exclusion of expert testimony and the granting of summary judgment against them on their negligence claim and their New Jersey Environmental Rights Act ("ERA") claim. Following is a summary of the reasoning of the District Court as to each of those rulings.

A.

The District Court granted Motiva's *Daubert* motion to exclude the testimony of McDonald on two alternative grounds. First, the District Court found that McDonald was not qualified to opine on the value of Plaintiffs' properties. Although McDonald had been a licensed appraiser in New Jersey for twenty-two years, the District Court determined that McDonald was not qualified to offer an opinion in this case because he had no particular experience in appraising property that had been devalued by contamination or the stigma of contamination.

Second, the District Court found that McDonald's report was based on unreliable methodology. The Court explained that McDonald divided Plaintiffs' properties into two groups: those that had detected levels of VOCs in their potable wells and those that did not. McDonald concluded that the properties with no contaminants detected in their drinking water suffered a thirty-five percent loss in market value, and that the properties with any amount of detected contamination lost sixty-six percent of their market value. The District Court discussed each calculation individually and concluded that both were

5

the product of unreliable methodology.

In his report, McDonald explained that, for the properties with no detected contamination, damages were based on the stigma that normally attaches to property near a contamination site. To quantify that stigma, McDonald compared Plaintiffs' properties with properties located near a contamination site in Dover Township, New Jersey. McDonald determined that the contamination site in Dover Township was in the final stage of recovery, but the properties near that site were still suffering from a thirteen percent loss in value. He then concluded that, because Plaintiffs' properties were in an earlier stage of recovery, the loss in value must be two to three times greater than that of the Dover properties, or about thirty-five percent.

The District Court found that McDonald's conclusion was based on a "highly misleading analogy." The Court pointed out that, unlike this case, the ground water contamination in Dover Township caused a relatively large number of children to develop cancer. Moreover, McDonald admitted that he selected the Dover Township site because the data was readily available, not because it was a comparable site. The District Court thus held that the severity of the contamination and the resulting illnesses in Dover Township made it inappropriate to compare that site with Plaintiffs' properties, "where there were few detections of contaminants and no reported physiological effects." (Dist. Ct. Op. at 23.)

For the properties that had detected levels of VOCs in their potable wells, McDonald determined that there was a sixty-six percent loss in value because, in addition

6

to stigma, there would also be a loss in value due to the lack of financing options available to potential buyers.  According to his report, McDonald sent a survey to thirteen lenders.  McDonald claimed that the six lenders who responded said they would not approve a loan to purchase Plaintiffs' properties, or they would require substantial conditions on such a loan.  As a result, McDonald concluded that, "it can be assumed that a purchaser with private financing or cash would be the only potential buyer."  (Appx. at A245.)  Based on the three years of data that McDonald reviewed, the only two homes in the same area as Plaintiffs' properties that were purchased in cash were sold for $39,205.00 and $47,000.00.  McDonald then reasoned that, "since the properties in question are superior to the two recent cash purchases, it would be conservative to say that a discount of 66% is supported for houses that have on site contamination."  (Appx. at A246.)

The District Court concluded that the initial premise relied upon by McDonald – that any potential buyer would have to pay cash – was not well-founded.  It was based on an e-mailed survey[2] that received responses from only six lenders, one of which refused to comment and another of which said it would loan to a buyer under certain

---

[2]The word "survey" actually gives McDonald's work a greater air of scientific validity than is warranted.  He sent an e-mail to a handful of lenders and asked a question fashioned, it seems, to get the negative answer his clients hoped for.  He told the lenders he was valuing property and had to "consider a number of detrimental conditions.  One ... is the difficulty of getting financing for a contaminated site ... ." (Appx. at A245.)  If you load the question (e.g., positing contamination) and then tell someone you expect an outcome (e.g., difficulty in getting financing), being told that may indeed be the outcome hardly seems a fair confirmation of a neutral hypothesis.

circumstances. Furthermore, the District Court explained, of the four lenders that said they were unwilling to extend a loan, at least one of them appeared to have misunderstood McDonald's survey question. That lender apparently thought McDonald was referring to property with contamination so severe that it was not in compliance with state environmental requirements. The District Court concluded that "the reliability of the 66% figure is entirely invalidated by the overemphasis placed on the four responses to the email hypothetical, the misleading implication in the email hypothetical, suggesting a much greater contamination of the property than actually present, and the unclear calculations and assumptions underlying McDonald's arrival at 66%." (Dist. Ct. Op. at 24.)

## B.

The District Court granted summary judgment in favor of Motiva on Plaintiffs' negligence claim because Plaintiffs failed to present evidence showing that their property had been damaged. Plaintiffs' primary proof of damages, McDonald's expert report, had been excluded by the District Court, but Plaintiffs pointed to other evidence that they claimed established property damage. Specifically, Plaintiffs submitted contracts, some un-executed, for the sale of several of Plaintiffs' properties. The District Court found the contracts to be unpersuasive, because Plaintiffs simply left it "to the Court's imagination to ascertain how [the] contracts demonstrate a loss in value." (Dist. Ct. Op. at 31.) Plaintiffs also presented the sworn testimony of Maria Wallace, who claimed that a man offered to buy her home and another property together for her asking price of

8

$500,000.00, but reneged after she told him about the leak at the Motiva gasoline station. The District Court noted, however, that Ms. Wallace was never given an offer in writing and had no evidence of the man's motive for withdrawing his offer, other than her own testimony. As a result, the Court concluded that, even when construed in the light most favorable to Plaintiffs, the evidence presented was not enough for a reasonable juror to conclude that Ms. Wallace's property lost value.

C.

The District Court also granted summary judgment in favor of Motiva on Plaintiffs' claim under the ERA. The ERA provides that "[a]ny person may commence a civil action in a court of competent jurisdiction against any other person alleged to be in violation of any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment." N.J. Stat. Ann. § 2A:35A-4. Plaintiffs used the private right of action provided by the ERA to try to enforce the New Jersey Spill Compensation and Control Act ("Spill Act"). Specifically, Plaintiffs alleged that Motiva violated the ERA because the leak from Motiva's gasoline station constituted a discharge within the meaning of the Spill Act, and, therefore, Motiva was liable for all cleanup and removal costs.

The District Court dismissed Plaintiffs' ERA claim for two reasons. First, the Court held that Plaintiffs' claim was preempted by the NJDEP's enforcement of the Spill Act. The Court explained that, when the NJDEP takes action pursuant to the Spill Act, a private claim under the ERA is preempted unless the NJDEP "has failed or neglected to

9

act in the best interest of the citizenry or has arbitrarily, capriciously or unreasonably acted." *Superior Air Prods. Co. v. NL Indus., Inc.*, 522 A.2d 1025, 1033 (N.J. Super. Ct. App. Div. 1987). The District Court concluded that the record indicated "consistent and pervasive NJDEP oversight of the remediation process," and that, as a result, Plaintiffs' private ERA action was not permitted.

Alternatively, the District Court held that Plaintiffs failed to comply with the notice provision of the ERA, which states that:

> No action may be commenced pursuant to this act unless the person seeking to commence such suit shall, at least 30 days prior to the commencement thereof, direct a written notice of such intention by certified mail, to the Attorney General, the Department of Environmental Protection, the governing body of the municipality in which the alleged conduct has, or is likely to occur, and to the intended defendant.

N.J. Stat. Ann. § 2A:35A-11. Plaintiffs did not argue that they provided the required notice, but rather that Motiva was estopped from raising the issue because it had not done so earlier in the case. The District Court rejected that argument. It found that, because the ERA's notice provision was intended to provide the Attorney General and the NJDEP with the opportunity to intervene and was not meant merely to protect defendants, Motiva was allowed to raise the issue for the first time at the summary judgment stage.

III.

As earlier noted, Plaintiffs appeal the order of the District Court granting Motiva's motion to exclude the testimony of Daniel McDonald and granting Motiva's motion for summary judgment. The District Court had subject matter jurisdiction over this case

10

pursuant to 28 U.S.C. § 1332. We have jurisdiction to review the District Court's order pursuant to 28 U.S.C. § 1291.

A.

Under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), we review the District Court's decision to exclude proposed expert testimony for an abuse of discretion. *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 118 (3d Cir. 2004). Regarding the admissibility of expert testimony, Federal Rule of Evidence 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Because we conclude that the District Court did not abuse its discretion in holding that McDonald's methodology was unreliable, we do not address the District Court's alternative finding that McDonald was not qualified.

McDonald's report states that he used the Detrimental Condition Model ("DCM") to determine that the group of Plaintiffs whose properties had no signs of contamination suffered a loss of thirty-five percent of the market value of their homes. According to McDonald, the DCM illustrates how the market value of property is affected by a detrimental event, such as environmental contamination, and by the subsequent stages of recovery. Essentially, as interpreted by McDonald, the DCM model suggests that

11

property experiences a drastic drop in market value immediately after a detrimental event occurs and that it regains value during four stages of recovery.

In order to place a specific numeric value on the damages that Plaintiffs incurred, McDonald analyzed the sales of homes in an area of Dover Township, New Jersey that had also experienced ground water contamination. He found that, even though the Dover Township contamination site was in the final stage of recovery, homes were still selling at a discount of thirteen percent below market value. McDonald then used the following approach to calculate the loss in value for Plaintiffs' properties:

> The subject area is in stage D of recovery, which is the beginning of the remediation process. Based on the acceptance of the Detrimental Condition Model as a viable process for valuing Detrimental Conditions to Real Estate, by the appraisal community, and the Subcommittee on Housing and Community Opportunity of the House Committee on Financial Services, it would be logical to assume that the discount to the properties which are the subject of this report, would be 2 to 3 times that of properties in the final stage of recovery. In this case a discount of 35% would be considered reasonable for properties that are affected by the ground water contamination and or the stigma that has resulted from the ground water contamination.

(Appx. at A244.) Thus, McDonald assumed that because Plaintiffs' properties were near a contamination site in the early stages of recovery they would have a loss in value two to three times greater than that of property near a contamination site in the final stage of recovery. We agree with the District Court that such guess work is not a reliable method. *See Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) ("In order for the expert testimony to be 'reliable,' we have required that the testimony be based on the 'methods and procedures of science,' rather than on 'subjective belief or unsupported

12

speculation.'").

Plaintiffs point out that the District Court never held that the DCM itself was unreliable. That is correct, but inapposite. As McDonald recognized in his report and Plaintiffs reiterate in their briefing, the DCM is a *model* that suggests a general relationship between the recovery process and property value. It has not been shown to be a reliable *method* for determining the loss in value due to contamination. McDonald arrived at a loss figure by comparing Plaintiffs' properties with properties near a contamination site in Dover Township and then assuming additional loss. It is that calculation-by-assumption method which the District Court found to be unreliable. The District Court certainly had the discretion to exclude "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Plaintiffs argue that McDonald's use of the Dover Township contamination site as a comparison was not unreliable. Specifically, Plaintiffs claim that there was no evidence to indicate that the stigma associated with the Dover site was significantly greater than the perception of Plaintiff's residential area. However, the problem recognized by the District Court was that McDonald also had no evidence indicating that the contamination in Dover Township was similar to the contamination at issue in this case. As the District Court pointed out, McDonald said that he selected the Dover site because he did not know of any other cases "where the data was as readily available." (Dist. Ct. Op. at 22.) In fact, he knew nothing about the type or degree of contamination in Dover Township, and

13

his report mentions nothing about the degree to which Plaintiff's properties were contaminated. Moreover, the little that McDonald apparently did know about the two sites indicated that they were not comparable. For example, McDonald acknowledged that the contamination in Dover Township caused children to develop cancer, whereas there was no such effect noted in this case. In short, there was no basis for saying that the Dover contamination site is similar to the properties involved in this litigation. As a result, it was within the District Court's discretion to exclude McDonald's testimony. *Cf. Gen. Elec. Co.*, 522 U.S. at 144-45 (holding that the animal studies relied upon by the expert were so dissimilar to the facts of the case that the district court did not abuse its discretion by excluding the expert's testimony).

Plaintiffs do not argue that the survey McDonald conducted was a reliable method for determining that only cash purchasers would be able to buy contaminated property. Instead, Plaintiffs attempt to downplay that portion of McDonald's analysis, claiming that it was "a small part" of his valuation. However, McDonald determined that the contaminated properties had a loss in value nearly double that of the properties that had no signs of contamination. The only reason he gave for that difference in value was the lack of financing options available to buyers interested in purchasing contaminated property. Thus, it was clearly not "a small part" of his valuation.

Plaintiffs also argue that, even if McDonald's methodology was flawed, his ultimate calculation "is logical and supportable simply as a matter of common sense." Common sense is enough to dispose of that argument. Rule 702 permits opinions that are

14

the "product of reliable principles and methods." Notwithstanding Plaintiffs' affinity for their expert's conclusions, they were obligated to demonstrate that those conclusions met the requirements of the rule. They failed in that obligation.

Plaintiffs' last ditch effort is to argue that the case should be remanded because, at a minimum, they were entitled to a hearing on the admissibility of McDonald's testimony. However, on this record it was within the District Court's discretion to decide the motion without a hearing. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 154 (3d Cir. 2000) (holding that an *in limine* hearing was not required when the proponent of the excluded testimony failed to show how such a hearing would have aided the court's decision).

## B.

Plaintiffs argue that, even if we determine McDonald's testimony was properly excluded, the District Court erred in granting summary judgment for Motiva on Plaintiffs' negligence claim because there was still sufficient evidence in the record to establish that their properties lost value. Specifically, Plaintiffs point to Exhibits N through R, which they submitted to the District Court in opposition to Motiva's motion for summary judgment. We exercise plenary review over the District Court's grant of summary judgment, and we apply the same well-known test for the propriety of summary judgment, *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007), namely, whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

15

56(c).  We "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  *Andreoli*, 482 F.3d at 647.  After reviewing the exhibits cited by Plaintiffs, we agree with the District Court that, based on those exhibits alone, no reasonable juror could conclude that Plaintiffs' properties lost value.

Exhibit N is an un-executed contract for the sale of Dorothy Mitchell's property.  Exhibit P is a contract for the sale of John Flolo's property, which was later cancelled for a reason that is not clear from the record.  Exhibit Q consists of a listing agreement for David and Diane Lodi's home, stating that the listing price is $169,900.00, and a subsequent contract for the sale of that home for $104,000.00.  Exhibit R consists of two documents: a settlement statement indicating that Thomas and Tina Stankiewicz purchased a home for $105,500.00 in February 1989, and another settlement statement indicating that the Stankiewiczs sold that home in August 2000 for $114,900.00.

Plaintiffs fail to show how any of those documents demonstrate that their properties lost value following the gasoline station leak.[3]  And, if a jury were to consider

---

[3]Plaintiffs argue, in a single paragraph, that the documents are evidence of property damage.  That paragraph reads as follows:

Although since the release there have been very few actual sales of the subject property, evidence of sales which were impacted was presented to the District Court.  A. 824-879.  For example, Plaintiff David Lodi listed his home ... for sale in April 2001, prior to notification of the Motiva release, with the multiple listing service for $169,000.00.  A. 861-74.  It sold for $104,000.00.  Id.  This is evidence of damage which need not, as a matter of law, require expert testimony.  Cf. New Jersey Sports & Exposition Authority v. Cariddi, 84 N.J. 102, 104-105 (1980).

those documents without any context, which is how Plaintiffs have presented them, the jury would have to rely on assumptions and speculation to conclude that Plaintiffs have proven an injury. For example, a jury would have to assume that the contract in Exhibit P was cancelled because the property had lost value. But, there is no evidence suggesting that that was the reason. Similarly, for Exhibit Q, a jury would have to determine whether the property sold for less than its listing price because it lost value or because of any number of other possible reasons, such as the listing price having been set too high or the owners having been eager to sell. Plaintiffs have not adduced any evidence that would assist a jury in sorting out such possibilities. Thus, we find that no reasonable jury could conclude, based on the evidence presented, that Plaintiff's properties were damaged.

Plaintiffs also claim that Exhibit O, the deposition testimony of Maria Wallace, demonstrates that her home declined in value by $150,000.00. Ms. Wallace testified that she was trying to sell her home and her father-in-law's home together. According to Ms. Wallace, a man offered to pay the listing price of $500,000.00 for both properties, but when she told him about the gasoline leak nearby, he decided that he only wanted to buy her father-in-law's property because it was farther away from the contamination site. Ms. Wallace refused to sell just the one property, so the man retracted his offer. Subsequently, another buyer offered to purchase both properties for $350,000.00, without

(Appellant's Br. at 25.)

17

even asking what the listing price was. Ms. Wallace told the buyer about the contamination, but he did not revoke or reduce his offer.

As with Plaintiffs' other exhibits, Ms. Wallace's deposition testimony does not demonstrate that her home declined in value. Plaintiffs' theory appears to be that the difference between the offer made by the first potential buyer and the offer made by the second represents a loss in value. Leaving aside other problems with that proof, it is inadequate because Plaintiffs fail to acknowledge that Ms. Wallace sold two properties together. Their theory requires a jury to determine how much, if any, of the $150,000.00 difference in the two offers was due to a loss in value in Ms. Wallace's home. Plaintiffs do not point to any evidence that would enable a jury to make such a determination. Therefore, we hold that no reasonable jury could conclude, based on Ms. Wallace's testimony, that her property declined in value.

In sum, we agree with the District Court that Plaintiffs have not identified any evidence that would allow a jury to find that Plaintiffs suffered an injury following Motiva's allegedly negligent behavior. The District Court therefore properly granted Motiva's motion for summary judgment.[4]

---

[4]Plaintiffs argue that the District Court erred by granting summary judgment in favor of Motiva without addressing their claim that Motiva's negligence caused them to suffer a loss of quality of life. However, in response to Motiva's motion for summary judgment, Plaintiffs did not mention their claim for lost quality of life. We have held that, where the party opposing a motion for summary judgment bears the ultimate burden of proof, the moving party may discharge its initial burden of showing that there is no genuine issue of material fact by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *UPMC*

C.

Plaintiffs contend that the District Court erred by permitting Motiva to raise the issue of Plaintiffs' noncompliance with the ERA's notice provision for the first time in its motion for summary judgment. Whether Plaintiffs' compliance with the ERA's notice provision is a mandatory precondition or one that could have been waived is a question of law, and, accordingly, we exercise plenary review. *See Knight v. Int'l Longshoremen's Ass'n*, 457 F.3d 331, 340 (3d Cir. 2006) (appellate review over questions of law is plenary). Plaintiffs also argue that the District Court erred by holding that their ERA claim was preempted by the NJDEP's enforcement of the Spill Act. Because we conclude that compliance with the ERA's notice provision is mandatory, we do not address the issue of preemption.

The notice provision of the ERA states that "[n]o action may be commenced pursuant to this act unless the person seeking to commence such suit" provides at least 30 days notice to the Attorney General, the NJDEP, the municipality in which the relevant conduct occurred, and the intended defendant. N.J. Stat. Ann. § 2A:35A-11. There is no

---

*Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party has satisfied its initial burden, the nonmoving party must, in their opposition to the motion, identify evidence of record that creates a genuine issue of material fact. *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988). The nonmoving party cannot later argue, on appeal, that there is evidence in the record that creates a genuine issue of material fact, if that evidence was not pointed out to the district court at the time of the motion for summary judgment. *Id.* at 694. Assuming there is such a claim to be made, Plaintiffs never argued to the District Court that there was a genuine issue of material fact regarding their claim for lost quality of life. Consequently, they cannot now argue that the District Court erred by failing to consider it.

19

New Jersey precedent addressing the issue of whether the ERA's notice provision is a mandatory precondition to a lawsuit or a requirement that can be waived at the discretion of the trial court. Therefore, we must predict how the New Jersey Supreme Court would rule if faced with the issue. *Covington v. Continental Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004). "In carrying out that task, we must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Id.* (quoting *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993)). Here, a decision by the United States Supreme Court on an analogous issue provides a reliable basis for our decision.

In *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989), the Supreme Court considered the effect of the notice provision in the Resource Conservation and Recovery Act of 1976 ("RCRA"). When that case was decided, RCRA's notice provision provided that:

> No action may be commenced under paragraph (a)(1) of this section - (1) prior to sixty days after the plaintiffs has given notice of the violation (A) to the Administrator [of the EPA]; (B) to the State in which the alleged violation occurs; and (C) to any alleged violator of such permit, standard, regulation, condition, requirement, or order.

*Id.* at 25-26; *see also* 42 U.S.C. § 6972(b)(1) (1982). The Court interpreted the language "no action may be commenced" to mean that compliance with the notice provision was a mandatory condition precedent to commencing a private suit under RCRA, and that a district court could not disregard that requirement. *Hallstrom*, 493 U.S. at 26, 31. As a

20

result, the Supreme Court held that the plaintiffs' failure to comply with the notice provision required dismissal of the action, even though the case had been litigated for nearly four years and there had been a determination on the merits. *Id.* at 32.

Because the ERA contains the same "no action may be commenced" language as RCRA,[5] we find the Supreme Court's reasoning in *Hallstrom* to be particularly persuasive. Plaintiffs provide no reason why we should not apply that reasoning in this case. Therefore, we conclude that the notice provision of the ERA is a mandatory condition precedent to bringing a private cause of action under the ERA, and, since the District Court could not have held that requirement waived, it did not err by allowing Motiva to raise it for the first time at the summary judgment stage.

## IV.

For the foregoing reasons, we will affirm the decision of the District Court.

---

[5]The District Court wrongly stated that the ERA lacks the "no action may be commenced" language of RCRA. (Dist. Ct. Op. at 40.) The notice provision of the ERA that was in effect when Plaintiffs filed their complaint in 2002 in fact did contain the "no action may be commenced" language. N.J. Stat. Ann. § 2A:35A-11 (2001).